NEW YORK CENT. & H. R. R. CO. v. CITY OF YONKERS et al.

(Supreme Court, Special Term, Westchester County.   March 20, 1907.)

1. EMINENT DOMAIN—RAILROADS—AUTHORITY TO BEGIN PROCEEDING.

A proceeding instituted by a railroad to condemn land for the construction of additional tracks and a freight yard, instituted after the executive committee of its board of directors had adopted a resolution delegating the matter to the president and fifth vice-president, was instituted after authority therefor had been given.

2. RAILROADS—CONSOLIDATION.

Laws 1869, p. 2399, c. 917, § 1, authorizing railroads to consolidate whenever the two or more railroads to be consolidated shall form a continuous line of railroad with each other, or by means of any intervening railroad bridge, authorizes railroads so connected as to form a continuous line of railroad with each other by means of an intervening railroad bridge owned by another to consolidate.

3. SAME—LIFE OF CONSOLIDATED COMPANY.

Railroads consolidating, as authorized by Laws 1869, p. 2399, c. 917, authorizing two or more railroads forming a continuous line of railroad with each other to consolidate, etc., may, by the agreement of consolidation, provide for the period of the corporate life of the consolidated company, irrespective of the restricted life of either of the companies consolidating.

4. SAME—USE OF TRACKS—NUMBER.

Where a railroad limited by its act of incorporation to three tracks consolidates with another railroad under Laws 1869, p. 2399, c. 917, containing no limit as to the number of tracks the railroad may use, the consolidated company is not limited to three tracks.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 448–450.]

5. EMINENT DOMAIN—RIGHT TO CONDEMN PUBLIC PARK—PERSONS ENTITLED TO OBJECT.

Private owners of parcels of land sought to be taken by a railroad contiguous to its right of way for additional tracks are not competent to object to the company's right to take a part of a public park belonging to a city, which makes no objection.

6. SAME—INABILITY TO AGREE WITH OWNER.

In a proceeding by a railroad to condemn land for a right of way, it appeared that its agent in negotiating with the owner misunderstood the exact location of the parcel sought to be acquired, in that he did not understand that such description included a portion of land on which a boathouse of the owner stood.   The company's offer for the land was rejected.   Held to show that the company, before instituting the proceeding, made proper efforts to agree with the owner for the purchase of the land, and was unable to agree with him.

Proceeding by the New York Central & Hudson River Railroad Company against the city of Yonkers and others to acquire land contiguous to its right of way for the construction of additional tracts thereon.   Judgment for plaintiff.

Albert H. Harris (John F. Brennan, of counsel), for plaintiff.
Charles Philip Easton, for defendants Palisade Boat Club, Robert G. Jackson, and Andrew Deyo.
Adrian M. Potter, for defendant Annie Grey.
Oswald W. Potter, for defendant Yonkers Yacht Club.
R. E. & A. J. Prime, for defendants Westch Trust Co. and Charles Banks.

MILLS, J. This is a proceeding under the condemnation law, brought by the plaintiff to acquire several parcels of land contiguous to its present right of way lands in the city of Yonkers, for the purpose of constructing thereon additional tracts, including a freight yard. Several of the defendants interposed answers, which, taken together, put at issue substantially all of the material allegations of the petition. The issues thus joined by the petition and answers have been brought to trial before me at Special Term, the evidence of the parties received, and their counsel heard upon oral arguments and by briefs submitted. After carefully considering the matter, it is my conclusion that the allegations of the petition have been established, and that its prayer should be granted.

I am thoroughly satisfied that the improvement proposed by the plaintiff, in affording increased railroad facilities at the city of Yonkers and in aid of which this proceeding is taken, is very necessary for the due service of the public, and that the various parcels of land herein sought to be acquired are necessary for such improvement. To my mind the evidence clearly establishes this proposition. Indeed, the need of additional railroad facilities at nearly all the leading points in Westchester county is so well known as to be almost a matter of common knowledge. The briefs submitted by the several counsel of the answering defendants present various legal objections upon which the following are my views and conclusions:

First objection: This is that the evidence does not establish that this proceeding has been authorized by the directors of the plaintiff. The contention here made is that the evidence shows merely a resolution of the executive committee of defendant's board of directors delegating the entire matter to the president and the fifth vice president, and that there is no evidence showing either the authority of the executive committee or that the president and fifth vice president have ever in any way acted upon the matter. In a similar case, viz., Matter of the Application of the New York Central Railroad Company v. Pierce et al., 33 Hun, 274, 276, the former General Term of the Fifth Department held, in substance, that the instituting of the proceeding by a petition duly verified by one of the defendant's officers was sufficient proof of such determination by the defendant. The opinion of that court upon the point said:

"The appellants contend that the necessity for the acquisition of the land sought is not adequately shown in this case, since there is no proof of an authoritative determination on the part of the petitioner to appropriate the property. In other words, it must appear, not only that the land sought is in fact necessary for the purposes of the company, but that the governing body of the company has formally decided that it is necessary. We think the determination of the company to that effect is sufficiently shown by its action in instituting this proceeding by its petition duly verified by its assistant president, particularly describing the land, and alleging the purposes for which it needs to acquire it."

This objection, therefore, should be overruled.

Second objection: This is that the plaintiff is not a public corporation, and therefore is not competent to acquire land by condemnation, or, being a public corporation, is not competent over the Yonkers part of its line to construct a fourth tract. and therefore is not competent to acquire lands for that purpose. The contention here presented in

support of this objection is threefold, viz.: (1) That neither of the railroad corporations which were consolidated or attempted to be consolidated to form the plaintiff were at the time of the attempted consolidation operating a bridge across the Hudson river at Alb ny, and that, therefore, they did not form, with any such bridge, a continuous line of railroad with each other, and were not competent to consolidate under chapter 917, p. 2399, of the Laws of 1869, under which the consolidation was attempted to be made; (2) that the corporate life of the new corporation, if the consolidation was effectual, expired before the commencement of these proceedings; and (3) that the Hudson River Railroad Company, which before the consolidation included the Yonkers line, had not the power to construct a fourth track, but was limited to three tracks; and that the consolidated company has no greater power over that portion of its line, and therefore is not competent to acquire lands by condemnation for the construction of a fourth or greater number of tracks. The plaintiff corporation was formed or attempted to be formed by the conso idation of the Hudson River Railroad Company, located south of Albany upon the east side of the Hudson river, with the New York Central Railroad Company, located on the west side, upon the theory that the railroads of the two companies formed a continuous line of railroad with each other by means of the intervening bridge over the Hudson river at Albany, over which their cars passed. The evidence fails to show that e ther company owned or operated the bridge; and it is asserted by the counsel for the defendant, raising this obj ction, that in fact neither did, but that the bridge was owned and operated by an independent bridge company. The claim of such counsel appears to be that, in order that the two companies should be competent to consolidate under chapter 917, p. 2399, of the Laws of 1869, one or the other must have owned or operated the intervening bridge. I do not so construe the first section of that act, which reads as follows:

"Section 1. It shall and may be lawful for any railroad company or corporation organized under the laws of this state, or of this state or any other state, and operating a railroad or bridge, either wholly within, or partly within and partly without this state, to merge and consolidate its capital stock, franchises and property with the capital stock, franchises and property of any other railroad company or companies organized under the laws of this state, or under the laws of this state and any other state, or under the laws of any other state or states, whenever the two or more railroads of the companies or corporations so to be consolidated shall or may form a continuous line of railroad with each other, or by means of any intervening railroad bridge or ferry."

Under that act it was sufficient that the consolidated railroads were connected so as to form a continuous line of railroad with each other "by means of any intervening railroad bridge or ferry." The statute contained no requirement that such intervening rai road bridge or ferry should be owned or operated by either of the consolidating companies, and none such can be implied. It was, I think, competent for the agreement or consolidation, which formed, in effect, the articles of incorporation of the new consolidated company, to provide the period of its corporate life, and that period was not restricted by the life of either of the consolidated companies according to its articles of incorporation. The power to fix the corporate life of the new corporation seems to have been granted in effect by section 8 (page 2403) of

the act of 1869 in making applicable the provisions of the then general railroad law of 1850. The expressions making such provisions applicable should be construed as meaning so far as may be consistent with the express provisions of the new act, viz., that of 1869. So construed, that act did not require a certificate of incorporation of the new company to be signed by 25 persons as provided by the then general railroad law of 1850. It was sufficient that the consolidation agreement was executed by the consolidating companies through their proper officials. This question as to the corporate life of the consolidated company has recently been decided in favor of the plaintiff company by Mr. Justice Kelly in the Colgate Case, 100 N. Y. Supp. 650, 50 Misc. Rep. 503, now, as I understand it, pending upon appeal to the Appellate Division. I think that the plaintiff company is entitled to take the benefit of the general law permitting a railroad company to condemn land for increasing its tracks, and that the original restrictions upon the Hudson River Railroad Company as to number of tracks, may be regarded as modified. I think, therefore, that this second objection should not be sustained.

Third objection: This is that a part of the land to be taken is owned by the city and already by it devoted to the purposes of a public park, and that land already devoted to one public purpose cannot be taken in condemnation proceedings without special legislative authority. The legal proposition here invoked in support of the objection is well established as a general rule. The city of Yonkers, however, does not take this objection in this proceeding, but by its proper authorities takes before the court the position that it does not wish to oppose or embarrass the public improvements proposed by the plaintiff company, evidently considering it to the advantage of the people of the city. The objection is, however, urged by two of the other defendants, who are private owners of other parcels of land to be taken. It does not seem to me that such private owners are competent to take the objection, or that their interests can be affected by it. Therefore this objection is also overruled.

Fourth objection: This is that the evidence is not sufficient to show, as to certain parcels of land, that the plaintiff, before commencing this proceeding, made proper efforts to agree with the owners of the parcels for their purchase, and was unable to so agree. Upon a review of the evidence, I think that it is sufficient in this respect. My only doubt in the matter is in reference to the parcel of the defendant, the Palisade Boat Club. The evidence indicates that the agent of the plaintiff, in negotiating with the representatives of the club, misunderstood the exact location of the description of the parcel which the plaintiff was seeking to purchase from the club, in that he did not understand that such description included a portion of the land under the boathouse. It cannot be doubted, of course, that an offer to purchase one distinct parcel will not warrant proceedings to condemn an entirely different parcel; but I do not think that a mistake of this character, in an attempt to locate the exact description given, should be held to vitiate the effect of the negotiation. It, moreover, is quite apparent in this case that the negotiations would not have been successful had not this error been made, because the plaintiff's offer for the land, at a certain rate per square foot, was in effect rejected by the club,

even with the explanation that it did not take any part of the premises under the boathouse. Much more would it have been rejected if it had been well understood that the parcel described did go for a space under the boathouse, so that the removal of that structure would likely be necessary.

This objection, therefore, is not sustained.

The judgment, therefore, must be for the plaintiff.